IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.    10-cv-00880-PAB-MJW

JONATHAN WHITE,

Plaintiff,

v.

TIMOTHY "TIM" WALKER;
MOLLY CHILSON;
JUDITH RUSSELL;
BARRY RUSSELL;
KEITH PINKSTON; and
DONALD. F. CUTLER IV,

Defendants.

---

## RECOMMENDATION ON
## MOTION TO DISMISS FILED BY DEFENDANTS WALKER, CHILSON, PINKSTON, AND CUTLER (Docket No. 10)
## and
## MOTION TO DISMISS FILED BY DEFENDANTS JUDITH RUSSELL AND BARRY RUSSELL (Docket No. 16)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This matter is before this court pursuant to an Order of Reference to Magistrate Judge issued by Judge Philip A. Brimmer on April 26, 2010.  (Docket No. 2).

## PLAINTIFF'S ALLEGATIONS

The pro se plaintiff's allegations in his Complaint include the following.   Plaintiff leased pasture land from non-parties Fay and Virgil Flickinger to rotate his livestock.  In 2005, Virgil Flickinger signed his and his wife's name on warranty deeds that transferred some of their real property to the Russell defendants.  Shortly thereafter, Fay signed a

2

Durable Power of Attorney appointing Virgil and defendant Judith Russell as holders of her power of attorney.  In October 2006, Judith Russell signed a Chaffee County document representing that the Flickinger pasture was leased to the plaintiff and had been for three years.  These representations were made to obtain favorable tax treatment on the Flickinger pasture.  Chaffee County officials went to the pasture and confirmed the presence of plaintiff's cattle grazing in the Fall of 2006.

In 2006, plaintiff ran as an independent candidate for Chaffee County Sheriff.  The newspaper refused to publish letters or advertisement in favor of plaintiff, whereas Sheriff employees' endorsements of defendant Walker, the incumbent Sheriff, which included insults of plaintiff, were published.  Plaintiff erected a sign, "John White for Sheriff," on the Flickinger pasture during the campaign which came to Walker's attention.

On November 7, 2006, the County Clerk, non-party Joyce Reno, announced the election results without having counted more than 1400 votes from a polling location in the northern part of the county.  In addition, a number of voters complained that their votes were not counted.  These election discrepancies were concealed and suppressed by the state actors named in the Complaint.  Plaintiff became aware of other complaints, which caused him to deliver an official, notarized request for a recount of the votes on November 14, 2006.  On November 15, 2006, plaintiff completed and mailed an official state form complaint to the Secretary of State of Colorado.

A recount was done on November 28 and 29, 2006, and significant issues concerning the recount were observed by plaintiff's election advocate.  Reno delivered to plaintiff various written summaries of the recount results.  On February 9, 2007,

plaintiff delivered to the Secretary of State another copy of his signed complaint and written analyses of the election recount summaries, in which plaintiff demonstrated that significant issues of authenticity and accuracy marred the recount and justified further investigation.  Secretary of State officials communicated with plaintiff and his agents and then contacted Chaffee County officials.

On February 22, 2007, the Chaffee County Sheriff's office met with the Russells concerning a plan to fabricate criminal charges against plaintiff due to the presence of his cattle on the Flickinger pasture.  Previously, Judith Russell had been told by Chaffee County officials that any lease with the plaintiff was a "civil matter."  At no relevant time had Virgil Flickinger ever requested that plaintiff vacate the pasture, nor did the state actors ask Virgil about plaintiff's lease of the pasture.  Plaintiff continued to pay rent for the pasture as he had done for four years.

On February 22, 2007, defendant Pinkston, the Undersheriff of Chaffee County, conspired with the Russells to effect the filing of an affidavit for a search and arrest warrant against the plaintiff for criminal trespass in which Pinskston stated that Judith Russell's authority as complainant was pursuant to a Power of Attorney.  The affidavit, however, deliberately concealed that Judith Russell was merely the co-holder of the Power of Attorney along with Virgil Flickinger, assuming that the underlying Power of Attorney was ever valid.  Pinkerston stated in the Affidavit that Virgil Flickinger "did not have any legal rights" to the pasture, according to Judith Russell, and Pinkston checked county records which showed that the pasture was held in the name of Fay Flickinger.  Pinkston concealed many material facts in the Affidavit, including the existence of Judith Russell's sworn statement in October 2006 on Chaffee County official records that

plaintiff was leasing the pasture and had a valid lease, that Virgil Flickinger was the co-holder of the Power of Attorney from Fay Flickinger and had been accepting rent from the plaintiff under the lease agreement, and that Judith Russell had never given plaintiff written notice to vacate the premises.

On February 22, 2007, plaintiff was served by the Chaffee County Sheriff with a Uniform Summons & Complaint for criminal trespass, and without a court order, the state actors used their police power to order plaintiff off the pasture where his cows were still located.

On February 23, 2007, Judith Russell and the Chaffee County Sheriff conspired together for the eviction of plaintiff from his leased property.  Without plaintiff's knowledge or consent, Judith Russell and the state actors met at the pasture and padlocked its entrance gate, preventing plaintiff from feeding his cows.  No note was left on the new padlock, and no effort was made to notify plaintiff of what had been done.

On February 28, 2007, plaintiff and his "fraud expert" met with two officials of the Secretary of State and delivered to them additional documentation of election fraud. These officials were hostile to and suspicious of plaintiff due to the many malicious accusations they had heard from the state actors discrediting and slandering plaintiff, but they admitted they would further investigate the plaintiff's allegations.

On March 5, 2007, plaintiff and a witness, Mae Folsom, met with Virgil Flickinger at his home.  Virgil openly complained about the Russell defendants and notified plaintiff that he barely has a place to sleep in any more.  Virgil asked for help, and plaintiff promised he would try.  Plaintiff and Virgil hand wrote and signed two Grazing Agreements, one for each of them, that confirmed Virgil's repeated statements that he

5

wanted plaintiff to continue leasing and using the pasture.

The following day, plaintiff and a "forensic fraud expert" met with three Secretary of State officials to review the Secretary of State's action that was to be taken to investigate the allegations of election fraud.  The officials admitted there was reasonable cause to suspect fraud and promised they would audit the election tapes. The officials admitted ongoing contact with Chaffee County state actors and admitted that the state actors represented to them that the plaintiff was a "criminal."  The repeated malicious slander of the plaintiff that the state actors communicated to the Secretary of State officials resulted in the Secretary of State failing to carry out any meaningful investigation or any audit of the election tapes.

Also on March 6, 2007, the state actors met with Judith Russell "to take concerted unlawful action for the intention of depriving Plaintiff of his federally protected rights."  Virgil Flickinger was interviewed and videotaped concerning the Grazing Agreement with plaintiff.

The following day, plaintiff was contacted by a number of Chaffee County residents who advised they had learned from state actors that there was a plan for a sheriff's vehicle to pull plaintiff over and then shoot him at close range, claiming self-defense.  Rumors of death threats against plaintiff were rampant throughout the county. Sheriff vehicles followed plaintiff and harassed him throughout the county.

On March 8, 2007, plaintiff mailed his complaint to the Secretary of State for the third time.  In addition, he met with Virgil Flickinger along with Ms. Scott of Adult Protective Services.  During that meeting, the Russells arrived and threw plaintiff out of Virgil's home and off the property, claiming it belonged to them.  Defendants Walker and

6

Pinkston were around the corner with surveillance equipment, and after plaintiff was thrown off the property, the Sheriff interrogated Ms. Scott, slandering and discrediting plaintiff and telling her that plaintiff had "committed crimes involving other at risk adults." That day the Russells met with the state actors at which time they planned the fabrication of crimes to be charged against the plaintiff for the purpose of falsely arresting and imprisoning him and depriving him of his leased pasture.  The Russell's part was to represent falsely that plaintiff's lease to the pasture expired in June 2006. The Russells told the state actors that Virgil had signed his own property over to them. None of the state actors questioned the lawfulness of the Russell's statements or actions.

In late February to early March 2007, the state actors requested the services of the Colorado Bureau of Investigation (CBI) to investigate plaintiff for alleged crimes against at-risk adults, theft, and criminal trespass.  One CBI undercover investigator, "Cody," repeatedly called plaintiff, posing as a victim of Walker's, claiming Walker had repeatedly and unfairly harassed him.  Plaintiff met with Cody twice, and Cody repeatedly tried to entrap plaintiff into saying something threatening about Walker. Their conversations were irrelevant to any alleged theft, trespassing, or crime against an at-risk adult, and plaintiff had the feeling that Cody was trying to set plaintiff up to be shot or seriously harmed.

On March 9, 2007, Pinkston prepared and signed an affidavit for the unlawful arrest of plaintiff on four charges, including two felonies, for charges for theft, criminal trespass, obtaining signature by deception, and crimes against at-risk adults.  The arrest warrant lacked probable cause and was based entirely on fabrication, deceit, and

concealment.  An arrest order was signed by Judge Barton, which included bail and

conditions of release which prevented plaintiff from contacting the Flickingers or the

Russells or entering the Flickinger pasture where plaintiff's cows were grazing.

On March 10, 2007, the Sheriff arrested plaintiff, and plaintiff was handcuffed and

transported to the Chaffee County Detention Facility and placed in a holding cell.  He

eventually posted bail and was released.

On March 12, 2007, Pinkston interviewed a Sheriff employee who falsely claimed

she saw plaintiff on the pasture in violation of his bail conditions, although she admitted

it was very dark at night and that she had been driving at highway speeds on the

opposite side of the highway from the property.  In response, plaintiff provided the state

actors with affidavits of three unrelated witnesses present on the pasture on the evening

of the alleged sighting who all attested that plaintiff never entered the pasture as

claimed.  Nevertheless, the state actors refused to dismiss the felonious charge brought

against plaintiff for alleged violation of his bail conditions and for more than one year

repeatedly threatened to arrest and jail plaintiff for violating his bail, even though they

knew the accusation was fabricated.

On March 21, 2007, defendants District Attorney Chilson and Deputy District

Attorney Cutler brought formal charges against plaintiff including four counts of criminal

misconduct, two of which were felonies, including the felony for violation of bail

conditions.  Chilson and Cutler deliberately concealed exculpatory evidence that

established plaintiff's innocence to the charges.  Chilson and Cutler knew that the

search and arrest warrants were not based on probable cause and that the charges

were entirely false.  Chilson and Cutler acted to encourage the stigmatizing and

discrediting of plaintiff and displayed deliberate indifference to the malicious and hostile hazing and abuse occurring under color of state law against plaintiff.

On March 23, 2007, a member of the El Paso County Drug Task Force who was familiar with and concerned about the official abuse and misuse of power occurring in Chaffee County by its officials against plaintiff was confronted and threatened by two men who claimed to be FBI agents.  They made it clear that they were not going to let plaintiff ruin Walker's career and told the Task Force member that if he pursued further investigation, "he would regret it."  They represented that Walker's brother is an FBI agent.  The two FBI agents claimed to know about plaintiff's complaint to the Secretary of State and the evidence of election fraud submitted.  These two agents are two of the John Does in the Complaint, and plaintiff intends to sue them under Bivens.

On March 26, 2007, the state actors obtained formally the government records which showed that the Russells had obtained, without consideration, two parcels of real property from the Flickingers, including the parcel on which Virgil lived.  They also obtained by subpoena the narrative prepared by Ms. Scott which showed that there was no evidence showing that plaintiff was other than merely concerned about Virgil's well-being.  This report was intentionally concealed and suppressed by the state actors.

Also on March 26, 2007, plaintiff was denied admission to a nursing home in Salida, Colorado, to visit an old friend because the state actors had contacted the nursing home and informed them that plaintiff is a danger to at-risk adults and should be prevented from associating with any of his elderly friends living there.  The state actors offered to come to the nursing home to enforce plaintiff's exclusion.

On March 27, 2007, plaintiff was contacted by Richard Peryam, a Texas resident

who owns pasture in Chaffee County, who told plaintiff that Walker had just telephoned him in Texas, wanting to know that plaintiff had cattle on Peryam's property and what he wanted Walker to do about it.  Peryam told Walker he knew that plaintiff had some cattle on his Chaffee County pasture.

In April 2007, defendant Cutler, with knowledge and consent of the state actors, spoke live on the radio, stating plaintiff was a "criminal" who had "committed felonies" which "he can prove."  These remarks were intentionally made to discredit, stigmatize, and slander plaintiff, and to prevent him from ever running for public office again or obtaining work, and to cause him loss of reputation and income and emotional/mental pain, suffering, and distress.

A year later, from April 22 to 25, 2008, a jury trial was held in the 11th Judicial District in Salida, Colorado, on the criminal charges.  The felony charges for bail violations were dismissed by the state actors a few days before trial commenced.  The jury found plaintiff not guilty on each charge.

On October 21, 2008, plaintiff served by mail his written notice of his intent to sue.

Plaintiff has suffered severe physical, mental, and emotional injuries, including difficulty breathing, severe sleep loss, nightmares, tension, anxiety, fright, and high blood pressure, culminating in severe chest pains and hospitalization in October 2008.

Plaintiff raises eight claims for relief: (1) violations of the Fourth and Fifth Amendments as against all defendants for unreasonable search and seizure, false arrest, false imprisonment, and filing an information without probable cause; (2) malicious prosecution as prohibited by the Fourth and Fourteenth Amendment as

10

against all defendants; (3) deprivation of his right of Freedom of Speech under the First

Amendment as against all defendants by preventing him from pursuing his right to run

for public office and file a complaint and supporting documentation concerning alleged

election fraud, including a conspiracy to retaliate against him for exercising his First

Amendment rights by fabricating a criminal investigation and the criminal charges

against him, and deliberately intimidating, discrediting, and stigmatizing him within the

Community and to the Secretary of State (including Cutler appearing on the local radio

and defendants using their influence to ensure that local newspapers ran front-page

stories that maliciously stigmatized and slandered plaintiff); (4) deprivation of rights

under the Due Process Clause of the Fifth and Fourteenth Amendments as against all

defendants by depriving him of his rights to run for public office, to have standing in the

community, to obtain paying work, and to have property rights in the pasture, and

charging him with fabricated criminal charges; (5) deprivation of Equal Protection under

the Fourteenth Amendment as against all defendants based on fabricating criminal

charges, discriminating against and punishing plaintiff for running for public office

against Walker, and denying his run for office, filing a complaint with the Secretary of

State, and leasing the pasture; (6) violations by all of the defendants of privacy rights

and rights of free speech and free association guaranteed by the First, Ninth, and

Fourteenth Amendments; (7) state common law and statutory claim for intentional

infliction of emotional distress as against all defendants; and (8) a state common law

and statutory claim for negligence as against all defendants.  He seeks monetary and

injunctive relief.

11

## MOTIONS TO DISMISS

Now before the court are two dispositive motions, namely, a Motion to Dismiss filed by defendants Timothy Walker, Molly Chilson, Keith Pinkston, and Donald F. Cutler, IV (hereinafter "the state defendants") (Docket No. 10), and a Motion to Dismiss filed by Judith Russell and Barry Russell (hereinafter "the Russells") (Docket No. 16). Plaintiff filed a response to each motion (Docket Nos. 15 and 19), and the defendants filed replies (Docket Nos. 18 and 20). The court has considered all of these motion papers as well as applicable Federal Rules of Civil Procedure and case law. In addition, the court has taken judicial notice of the court's file. The court now being fully informed makes the following findings, conclusions, and recommendations.

The state defendants move for dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on the following grounds: (1) with regard to Claims One, Three, Four, Five, and Six, they are barred by the applicable two-year statute of limitations, defendants Chilson and Butler are entitled to absolute immunity, and plaintiff has not alleged the personal involvement of defendant Walker; (2) with regard to Claim Two, defendants Chilson and Cutler are entitled to absolute immunity from plaintiff's malicious prosecution claim, plaintiff has not alleged the personal involvement of defendant Walker, and the claim fails on its merits because plaintiff has only alleged in a conclusory fashion that there was not probable cause to support the issuance of a summons and his arrest; (3) also with regard to Claim Three, plaintiff fails to state a First Amendment claim because he has not established that the defendants' adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct; (4) also with regard to Claim Four, the Fifth

12

Amendment does not apply to the defendants who are state actors, and plaintiff cannot maintain any due process claim related to running for public office or to obtain paying work because neither qualifies as a protected property interest; (5) also with regard to Claim Five, plaintiff's equal protection theory fails on the merits because plaintiff fails to allege anything other than in conclusory terms that he was treated differently than anyone else similarly situated to him or that he was subject to intentional discrimination; (6) also with regard to Claim Six, plaintiff's invocation of the Ninth Amendment fails because it is not a source of any independent constitutional rights enforceable pursuant to § 1983, and plaintiff's right to privacy theory also fails on the merits because plaintiff's allegations do not implicate the right to privacy because they are unrelated to any allegation the defendants inappropriately disclosed the plaintiff's private, confidential information; and (7) Claims Seven and Eight are barred by the Colorado Governmental Immunity Act ("CGIA"), are barred by the applicable statute of limitations, and defendants Chilson and Cutler are entitled to absolute immunity.

The Russells join in the state defendants' motion to dismiss and seek dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on the following grounds: (1) plaintiff's claims against the Russells are time barred; (2) plaintiff's federal claims fail because the Russells are private individuals; and (3) plaintiff's negligence claim fails because the Russells owed plaintiff no duty of care.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo.,

154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'"  Cutter v. RailAmerica, Inc., 2008 WL 163016, *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp., 550 U.S. at 545 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.  "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . .  Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

Plaintiff is proceeding *pro se.*  The court, therefore, reviewed his pleadings and other papers liberally and held them to a less stringent standard than those drafted by attorneys.  Trackwell v. United States Government, 472 F.3d 1242, 1243 (10th Cir. 2007).  See  Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro*

14

*se* complaint to less stringent standards than formal pleadings drafted by lawyers).

However, a *pro se* litigant's conclusory allegations without supporting factual averments

are insufficient to state a claim upon which relief can be based.  Hall v. Bellmon, 935

F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove

facts that have not been alleged or that a defendant has violated laws in ways that a

plaintiff has not alleged.  See Associated Gen. Contractors of Cal., Inc. v. California

State Council of Carpenters, 459 U.S. 519, 526 (1983).  See Whitney v. New Mexico,

113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not supply additional factual

allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's

behalf); Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court

may not "construct arguments or theories for the plaintiff in the absence of any

discussion of those issues").  "The plaintiff's *pro se* status does not entitle him to

application of different rules."  Wells v. Krebs, 2010 WL 3521777, at *2 (D. Colo. Sept.

1, 2010).

### Statute of Limitations

Defendants assert that the plaintiff's claims are time-barred.  "At the motion-to-

dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations

defense only if it appears beyond a doubt that Plaintiff[] can prove no set of facts that

toll the statute."  Matthews v. Wiley, — F. Supp. 2d —, 2010 WL 3703357, at *5 (D.

Colo. Sept. 13, 2010) (quoting Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1288

n.13 (11th Cir. 2005)).

Plaintiff's § 1983 claims are governed by the two-year statute of limitations

contained in § 13-80-102, C.R.S.  Braxton v. Zavaras, 614 F.3d 1156, 1159 (10th Cir.

2010); Workman v. Jordan, 32 F.3d 475, 482 (10th Cir. 1994); Merrigan v. Affiliated

Bankshares of Colo., Inc., 775 F. Supp. 1408, 1411-12 (D. Colo. 1991).  Federal law,

rather than state law, determines when a federal claim accrues.  Section 1983 claims

accrue, for the purposes of the statute of limitations, when the plaintiff knows or has

reason to know of the existence and cause of injury which is the basis of his action.

Kripp v. Luton, 466 F.3d 1171, 1175 (10th Cir. 2006); Industrial Constructors Corp. v.

United States Bureau of Reclamation, 15 F.3d 963, 969 (10th Cir. 1994).

   Here, the Complaint was filed on Monday, April 26, 2010.  Plaintiff's acquittal

allegedly took place on April 25, 2008.  All of the other specific, discrete acts detailed in

the Complaint with respect to plaintiff's claims brought pursuant to § 1983, however,

occurred well more than two years before this action was commenced and are thus

barred by the two-year statute of limitations.  Thus, the only claim brought pursuant to §

1983 that appears to not be barred by the statute of limitations is Claim Two, plaintiff's

claim of malicious prosecution.  See Mondragon v. Thompson, 519 F.3d 1078, 1083

(10th Cir. 2008) ("[A] due process claim for malicious prosecution arises only once the

original action, whatever form it has taken, has been terminated in favor of the plaintiff. .

. .  Because the statute of limitations does not start running before the elements of a

claim are satisfied, the statute of limitations for this due process claim cannot start until

the plaintiff has achieved a favorable result in the original action.") (internal quotations

omitted).

   Plaintiff, however, argues in his Response that the continuing violation doctrine

applies here.  The Tenth Circuit, however, has not yet specifically applied this doctrine

to § 1983 actions.  See Wood v. Milyard, 2011 WL 103029, at *3 (10th Cir. Jan. 13,

2011) <u>Frazier v. Jordan</u>, 2007 WL 60883, at *4 (10th Cir. Jan. 10, 2007), <u>cert. denied</u>, 550 U.S. 975 (2007); <u>McCormick v. Farrar</u>, 147 Fed. Appx. 716, 719-20 (10th Cir. 2005); <u>Burkley v. Correctional Healthcare Management of Okla., Inc.</u>, 141 Fed. Appx. 714, 716 n.2 (10th Cir. 2005); <u>Matthews v. Wiley</u>, — F. Supp. 2d —, 2010 WL 3703357, at *6 (D. Colo. Sept. 13, 2010); <u>Montoya v. Board of County Com'rs</u>, 2007 WL 779832, at *6 (D. Colo. Mar. 14, 2007).  <u>See also</u> <u>Thomas v. Denny's, Inc.</u>, 111 F.3d 1506, 1513-14 (10th Cir. 1997) (doctrine does not apply to § 1981 claims).

Nevertheless, even assuming, for the sake of argument, that this doctrine does apply to § 1983 actions, this court notes that the Tenth Circuit's application of the doctrine in other contexts, such as Title VII claims, "is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated."  <u>Koch v. Daniels</u>, 2007 WL 2029003, at *9 (W.D. Okla. July 10, 2007) (quoting <u>Martin v. Nannie & the Newborns, Inc.</u>, 3 F.3d 1410, 1415 n.6 (10th Cir. 1993), <u>overruled on other grounds</u>, <u>Davidson v. America Online, Inc.</u>, 337 F.3d 1179 (10th Cir. 1993)).  Therefore, the Tenth Circuit has held that even where this doctrine is applicable, such a claim fails "if the plaintiff knew, or through the exercise of reasonable diligence would have known, [he] was being discriminated against at the time the earlier events occurred."  <u>Id.</u> (quoting <u>Davidson</u>, 337 F. 3d at 1184).  Here, upon a review of the Complaint, it is evident that plaintiff knew that his rights were allegedly being violated by the defendants more than two years before this action was commenced and would have been aware at the outset that defendants' actions were, in his view, retaliatory.  Thus, even if the continuing violations doctrine were to apply to § 1983 suits, this court finds that the doctrine is not applicable under

17

the facts alleged here.

The two state law claims, Claims Seven and Eight, are also time-barred as they accrued well more than two years before he filed his Complaint here.  Furthermore, "Colorado limits the application of the 'continuing violation' doctrine to employment discrimination cases."  Tara Woods Ltd. Partnership v. Fannie Mae, — F. Supp.2d —, 2010 WL 3190614, at *9 (D. Colo. Aug. 12, 2010) (citing Polk v. Hergert Land & Cattle Co., 5 P.3d 402, 405 (Colo. App. 2000)).  As correctly asserted by the state defendants, the one-year limitations period for claims against law enforcement applies to plaintiff's state law claims against Sheriff Walker and Undersheriff Pinkston.  See § 13-80-103(1)(c), C.R.S.; Delta Sales Yard v. Patten, 870 P.2d 554, 557 (Colo. App. 1993), aff'd, 892 P.2d 297 (Colo. 1995); Bailey v. Clausen, 557 P.2d 1207, 1211 (Colo. 1976) ("sheriff" in statute applied to deputy sheriffs appointed by the sheriff).  In addition, the two-year statute of limitations for claims against government employees applies to plaintiff's state law claims against defendants District Attorney Chilson and Deputy District Attorney Cutler.  See § 13-80-102(1)(h), C.R.S.  Bad Boys of Cripple Creek Min. Co., Inc. v. City of Cripple Creek, 996 P.2d 792, 795 (Colo. App. 2000).  Finally, these tort claims are also time-barred with respect to the Russells. See § 13-8-102(1)(a), C.R.S.

In sum, this court finds that Claims One, Three, Four, Five, Six, Seven, and Eight are time barred and should thus be dismissed with prejudice.  Based on this finding, and in the interest of judicial economy, this court will not address all of the other bases for dismissal of these claims raised in the motions to dismiss.

18

**Malicious Prosecution Claim**

Based upon the findings above, the only claim not time-barred is Claim Two, which alleges malicious prosecution. The common law elements of malicious prosecution for malicious prosecution claims under § 1983 are: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." Novitsky v. City of Aurora, 491 F.3d 1244, 1258 (10th Cir. 2007).

Here, defendants assert that plaintiff has not met the third element for his malicious prosecution claim because he alleges in conclusory fashion that there was not probable cause to support the issuance of a summons and his arrest. Defendants contend that the Complaint is devoid of any actual facts that support any conclusion that probable cause did not exist and that plaintiff does nothing more than formulaically assert in conclusory terms that no probable cause existed. Therefore, it is asserted that plaintiff's conclusory allegations of a lack of probable cause are insufficient to state a viable malicious prosecution claim. This court agrees with the defendants. See Myers v. Koopman, 2010 WL 3843300 (D. Colo. Sept. 27, 2010) (plaintiff's allegations on the key element of malice were general and conclusory). Plaintiff's allegations in the Complaint do not provide any factual specificity on the key element of lack of probable cause. "[T]he tenet that a court must accept as true all of the allegations in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, — U.S. —, —,
129 S. Ct. 1937, 1949 (2009).  When "the well-pleaded facts do not permit the
court to infer more than the mere possibility of misconduct, the complaint has
alleged-but it has not 'show[n]-'that the pleader is entitled to relief.' Fed. Rule Civ.
Proc. 8(a)(2)." <u>Id.</u> at 1950.  "While legal conclusions can provide the framework of
a complaint, they must be supported by factual allegations."  <u>Id.</u>  Plaintiff's
allegations of lack of probable cause are not supported by factual allegations that
are sufficiently specific.  "An innocent person may be prosecuted unjustly, and
subjected to the expense and disgrace incident thereto with no right to call the
prosecutor to account, provided he acted upon an honest and reasonable belief in
commencing the proceeding complained of.  One may act on what appears to be
true, even if it turns out to be false, provided he believes it to be true and the
appearances are sufficient to justify the belief as reasonable. . . .  The defendant in
a suit based on malicious prosecution may have probable cause for the filing of the
charges even though subsequent events may prove such charges to be erroneous.
The existence of probable cause is alone sufficient to relieve a defendant of a
charge of malicious prosecution.  Both malice and want of probable cause must be
proved to justify a recovery." <u>Montgomery Ward & Co. V. Pherson</u>, 272 P.2d
643,646 (Colo. 1954).  Therefore, it does not necessarily follow from the mere
assertion that plaintiff was acquitted of all charges that the defendants lacked
probable cause to charge and prosecute him.   In sum, it is recommended that
Claim Two be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

      **WHEREFORE,** for the foregoing reasons, it is hereby

20

**RECOMMENDED** that the Motion to Dismiss Filed by Defendants Walker, Chilson, Pinkston, and Cutler **(Docket No. 10)** be **granted**.  It is further

**RECOMMENDED** that the Motion to Dismiss Filed by Defendants Judith Russell And Barry Russell **(Docket No. 16)** be **granted**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives _de novo_ review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Date: January 26, 2011                          s/ Michael J. Watanabe
        Denver, Colorado                          Michael J. Watanabe
                                                             United States Magistrate Judge