IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-00880-PAB-MJW

JONATHAN WHITE,

    Plaintiff,

v.

TIMOTHY "TIM" WALKER,
MOLLY CHILSON,
JUDITH RUSSELL,
BARRY RUSSELL,
KEITH PINKSTON,
DONALD F. CUTLER IV, and
DOES 1 THROUGH 10, inclusive,

    Defendants.

---

**ORDER**

---

This matter is before the Court on the Recommendation [Docket No. 28] filed by United States Magistrate Judge Michael J. Watanabe on January 26, 2011.  Magistrate Judge Watanabe recommends that the Court grant the motion to dismiss filed by defendants Walker, Chilson, Pinkston, and Cutler [Docket No. 10] and the motion to dismiss filed by defendants Judith and Barry Russell [Docket No. 16].  On February 7, 2011, plaintiff filed timely objections.  Therefore, the Court reviews the pending motions de novo, *see* Fed. R. Civ. P. 72(b)(3), and, in light of plaintiff's pro se status, construes plaintiff's filings liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Plaintiff asserts eight claims for relief against all of the defendants, the first six of

which arise under 42 U.S.C. § 1983. Plaintiff's seventh and eighth claims for relief assert state law causes of action.[1] In support of all of the claims, plaintiff contends that the defendants conspired to assist defendant Timothy Walker, the Sheriff of Chaffee County, Colorado, retain his job in the face of plaintiff's 2006 electoral challenge and further conspired to prevent plaintiff from exercising leaseholder rights on property transferred to defendants Judith and Barry Russell.

Plaintiff's § 1983 claims are subject to a two-year statute of limitations. *See* Colo. Rev. Stat. § 13-80-102(1)(g) ("All actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and "regardless of the

---

[1]The Recommendation accurately summarized the claims as follows: "(1) violations of the Fourth and Fifth Amendments as against all defendants for unreasonable search and seizure, false arrest, false imprisonment, and filing an information without probable cause; (2) malicious prosecution as prohibited by the Fourth and Fourteenth Amendment as against all defendants; (3) deprivation of his right of Freedom of Speech under the First Amendment as against all defendants by preventing him from pursuing his right to run for public office and file a complaint and supporting documentation concerning alleged election fraud, including a conspiracy to retaliate against him for exercising his First Amendment rights by fabricating a criminal investigation and the criminal charges against him, and deliberately intimidating, discrediting, and stigmatizing him within the Community and to the Secretary of State (including Cutler appearing on the local radio and defendants using their influence to ensure that local newspapers ran front-page stories that maliciously stigmatized and slandered plaintiff); (4) deprivation of rights under the Due Process Clause of the Fifth and Fourteenth Amendments as against all defendants by depriving him of his rights to run for public office, to have standing in the community, to obtain paying work, and to have property rights in the pasture, and charging him with fabricated criminal charges; (5) deprivation of Equal Protection under the Fourteenth Amendment as against all defendants based on fabricating criminal charges, discriminating against and punishing plaintiff for running for public office against Walker, and denying his run for office, filing a complaint with the Secretary of State, and leasing the pasture; (6) violations by all of the defendants of privacy rights and rights of free speech and free association guaranteed by the First, Ninth, and Fourteenth Amendments; (7) state common law and statutory claim for intentional infliction of emotional distress as against all defendants; and (8) a state common law and statutory claim for negligence as against all defendants." Docket No. 28 at 9-10.

theory upon which suit is brought . . . shall be commenced within two years."); *see also Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994) (finding that "§ 1983 claims are best characterized as personal injury actions and we therefore apply" the State of Colorado's two-year statute of limitations (citation omitted)).  Plaintiff commenced this action on April 21, 2010.[2]  The only event that occurred within two years of that date was plaintiff's state criminal trial, which commenced on April 22, 2008 and concluded with plaintiff's acquittal on all counts on April 25, 2008.  As the Recommendation correctly points out, "[a]ll of the other specific, discrete acts detailed in the Complaint with respect to plaintiff's claims brought pursuant to § 1983 . . . occurred well more than two years before this action was commenced and are thus barred by the two-year statute of limitations."  Docket No. 28 at 15.  Consequently, claims one, three, four, five, and six must be dismissed as they rest on the out-of-time events.[3]

Plaintiff's second claim for relief, which alleges malicious prosecution, is not barred by the statute of limitations, as it did not accrue until he was acquitted on April 25, 2008.  *See Heck v. Humphrey*, 512 U.S. 477, 484 (1994) ("One element that must

---

[2]The Recommendation misstated the date the complaint was filed as April 26, 2010.  *See* Docket No. 28 at 15.

[3]Plaintiff invokes the "continuing violation" doctrine in an attempt to save these claims.  The Court agrees with the Recommendation that, "even assuming . . . that this doctrine does apply to § 1983 actions," plaintiff "knew that his rights were allegedly being violated by the defendants more than two years before this action was commenced and would have been aware at the outset that defendants' actions were, in his view, retaliatory."  Docket No. 28 at 16; *see Davidson v. America Online, Inc.*, 337 F.3d 1179, 1184 (10th Cir. 2003) ("[A] continuing violation claim fails if the plaintiff knew, or through the exercise of reasonable diligence would have known, [he] was being discriminated against at the time the earlier events occurred.") (internal quotation marks and citations omitted).

be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused."); *Mondragon v.* Thompson, 519 F.3d 1078, 1083 (10th Cir. 2008); *see also Triplett v. Tripp*, No. 05-CV-01892-RPM, 2007 WL 2757440, at *3 (D. Colo. Sep. 20, 2007) ("A § 1983 claim of a constitutional violation resulting in wrongful prosecution generally accrues when the criminal proceeding is terminated in favor of the accused.").

Plaintiff's second claim also names two of the deputy district attorneys who prosecuted him. However, in their role as prosecutors, defendants Chilson and Cutler are "entitled to absolute immunity for their decisions to prosecute, their investigatory or evidence-gathering actions, their evaluation of evidence, their determination of whether probable cause exists, and their determination of what information to show the court." *Nielander v. Board of County Comm'rs.*, 582 F.3d 1155, 1164 (10th Cir. 2009) (citing *Imbler v. Pachtman*, 424 U.S. 409, 425-28 (1976)). Plaintiff's allegations against them implicate decisions regarding "whether and when to prosecute[ ] [and] whether to dismiss" the case against him and are, therefore, barred. *Imbler*, 424 U.S. at 431 n. 33; *see Jackson v. New Mexico Public Defender's Office*, 361 F. App'x 958, 962 (10th Cir. 2010) ("The test is a functional one which focuses on activities 'intimately associated with the judicial phase of the criminal process. . . .' The focus, therefore, is 'not on the harm that the conduct may have caused or the question whether it was lawful.'") (citations omitted).[4]

---

[4] Plaintiff also alleges that defendant Cutler made defamatory statements about him during a radio interview. *See* Docket No. 1 at 8, ¶ 46. Plaintiff has not, however, asserted a § 1983 defamation claim separate from his malicious prosecution claim. Furthermore, as discussed below, *see infra* n.9, there would have been little prospect

In regard to defendants Walker and Pinkston, the law enforcement officers sued by defendant, plaintiff argues that he has a viable malicious prosecution claim against them of the sort recognized in *Robinson v. Maruffi*, 895 F.2d 649 (10th Cir. 1990). In *Robinson*, however, plaintiff alleged facts supporting a malicious prosecution conspiracy in which police officers played an active and continuous role, including tampering with trial witnesses. *See Robinson*, 895 F.2d at 654-55.[5] The complaint here is devoid of non-conclusory factual allegations sufficient to raise an inference that defendants Walker and Pinkston played any such role in an ongoing conspiracy which extended beyond plaintiff's arrest.

In regard to Walker, the complaint lacks any allegations showing his personal involvement in any conduct which "caused the plaintiff's continued confinement or prosecution," a required showing to make out a malicious prosecution claim. *Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007) (stating that a malicious prosecution claim consists of the following elements: "1) the defendant caused the

---

for such a claim in the event plaintiff had properly requested leave to amend his complaint.

[5]Defendants contend that *Robinson* was overruled by *Wallace v. Kato*, 549 U.S. 384, 396 (2007). *Wallace* addressed the accrual date of false arrest and false imprisonment actions pursuant to § 1983, distinguishing them from malicious prosecution claims: "Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process – when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." *Wallace*, 549 U.S. at 389-390 (citations omitted); *see id.* at 390 n.2 ("We have never explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983, and we do not do so here.") (citations omitted). For the reasons discussed above, plaintiff's claim fails even if *Robinson* is still viable.

plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages"). In fact, plaintiff has alleged no personal participation of Walker in any of the alleged conduct. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (personal participation in the alleged constitutional violation is an essential element of a § 1983 action); *see also Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993) ("A supervisor is not liable under § 1983 unless an 'affirmative link' exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.").

Instead, plaintiff generally alleges actions taken by the "state actors" and the Chaffee County Sheriff's Office. The Tenth Circuit has emphasized that "'[c]ontext matters in notice pleading.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). Because plaintiffs often name "a number of government actors sued in their individual capacities" in § 1983 claims, "it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1249-50 (emphasis in original). While this does not require "the sort of specificity required in claims subject to Fed. R. Civ. P. 9(b)," *VanZandt v. Oklahoma Dept. of Human Services*, 276 F. App'x 843, 847 (10th Cir. 2008), alleging actions by "state actors" or the Chaffee County Sheriff's Office is not adequate to plead a malicious prosecution claim against Walker.

The allegations regarding Pinkston also fail to state a claim for malicious prosecution. Plaintiff alleges that Pinkston prepared two affidavits, apparently in support of a search warrant and at least one arrest warrant. *See* Docket No. 1 at 4, ¶ 26 and 7, ¶ 38. Plaintiff alleges in conclusory fashion that Pinkston "conspired with the Russell Defendants" to arrest him without probable cause. The complaint, however, lacks any non-conclusory allegations supporting the inference that Pinkston was involved in any alleged conspiracy to prosecute plaintiff maliciously. Again, plaintiff relies upon allegations regarding "state actors" and the Chaffee County Sheriff's Office. Such allegations, as discussed above, are insufficient. *See VanZandt*, 276 F. App'x at 849 (noting that "plaintiffs under the *Twombly* standard must do more than generally use the collective term 'defendants'" but rather must "differentiate between the actions of each individual defendant and the actions of the group as a whole"); *Bridges v. Lane*, 351 F. App'x 284, 286 (10th Cir. 2009) ("We are especially critical of complaints that do not articulate specific times, places, or persons involved in the alleged misconduct because such complaints give 'defendant[s] seeking to respond to plaintiffs' conclusory allegations . . . little idea where to begin.'") (quoting *Robbins*, 519 F.3d at 1248). Furthermore, even assuming that plaintiff alleged facts that supported the conclusion that Pinkston was "'instrumental in the plaintiff's continued confinement or prosecution,'" *Robinson*, 895 F.2d at 656 (quoting *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988)),[6] the complaint fails to allege facts showing that Pinkston lacked probable

---

[6]A law enforcement officer is not shielded from liability for malicious prosecution by the prosecutor's decision to charge an individual if it can be shown that the officer "'*deliberately* supplied misleading information that influenced the decision'" to charge. *Pierce v. Gilchrist*, 359 F.3d 1279, 1292 (10th Cir. 2004) (quoting *Jones*, 856 F.3d at

7

cause for plaintiff's arrest.  Similarly, there are no allegations regarding conduct by Pinkston that would support the conclusion that he acted with malice.  *See supra Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007) (outlining elements of a malicious prosecution claim as including a lack of probable cause and malice).[7]

As to the Russells, the Court concludes that plaintiff may not pursue his malicious prosecution claim against them pursuant to § 1983.  The Russells are private citizens.  Therefore, plaintiff must allege facts showing that the Russells took actions under color of law.  *See Murray v. Oklahoma*, 2008 WL 740338, at *4 (W.D. Okla. March 17, 2008) (citing *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447-56 (10th Cir. 1995)); *see West v. Atkins*, 487 U.S. 42, 48 (1988).  As noted above, plaintiff alleges a conspiracy among all the defendants.  "Private individuals and entities may be deemed state actors . . . if they have 'acted together with or [have] obtained significant aid from state officials, or [if their] conduct is otherwise chargeable to the state.'" *Johnson v. Rodrigues*, 293 F.3d 1196, 1202 (10th Cir. 2002) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)).  In this case, plaintiff's allegations regarding a conspiracy between the Russells and the state actors focuses on conduct leading up to his allegedly false arrest that are outside the statute of limitations.

---

994) (emphasis added).

[7]Plaintiff also alleges that, two days after his March 10, 2007 arrest, Pinkston received a witness statement that plaintiff was seen violating his bail conditions.  *See* Docket No. 1 at 7, ¶ 40.  While plaintiff points out factors that might call into question the witness's ability to accurately see him, the allegations are insufficient to support plaintiff's conclusion that the witness statement was "patently false."  Docket No. 1 at 7, ¶ 40.  That plaintiff later provided "state actors" with evidence he contends refuted the witness statement does not render sufficient his allegations regarding Pinkston.

The only conduct plaintiff alleges the Russells engaged in that falls within the statute of limitations is their alleged perjury at plaintiff's criminal trial. The complaint lacks any specific allegations that the testimony was the result of an "agreement and concerted action," *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983), dating back to the Russells' interactions with law enforcement regarding plaintiff's arrest. In fact, the complaint makes no allegation of any misconduct by the Russells after the March 8, 2007 meeting between the "Russell Defendants" and the "state actors," during which the Russells reported plaintiff, and before their allegedly perjured testimony at his trial more than a year later. Thus, it is not at all clear *with whom* the Russells reached any agreement to maliciously prosecute plaintiff and what form any concerted action took. As a result, the complaint falls short of stating a § 1983 malicious prosecution conspiracy claim between public and private actors. *See Anderson v. Kitchen*, 389 F. App'x 838, 841 (10th Cir. 2010) ("'When a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action.'") (quoting *Scott v. Hern*, 216 F.3d 897, 907 (10th Cir. 2000)).

As for any claim plaintiff attempts to bring for injury suffered on account of the allegedly perjured testimony, the Russells enjoy absolute immunity. *See Briscoe v. LaHue*, 460 U.S. 325, 345-46 (1983) (in order to protect witnesses from the threat of lawsuits based upon their testimony, witnesses have absolute immunity from liability for

testimony, even if allegedly perjured); *Bennett v. Passic*, 545 F.2d 1260, 1264 (10th Cir. 1976) ("[W]itnesses who testify at [criminal] trial are not acting under color of state law."). Furthermore, witnesses have absolute immunity for claims that they committed a conspiracy to commit perjury at trial. *See Miller v. Glanz*, 948 F.2d 1562, 1571 (10th Cir. 1991) ("[W]e conclude that the extension of absolute immunity from civil liability to those who allegedly conspire to present perjured testimony in furtherance of a criminal conviction serves the same important purpose of immunity to witnesses themselves.").[8]

Plaintiff also brings two state law claims for relief. Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over those claims, but "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because the Court is dismissing plaintiff's federal claims, it will decline to exercise supplemental jurisdiction over the state law causes of action. *See Brooks v. Gaenzle*, 614 F.3d 1213, 1229-30 (10th Cir. 2010) (noting that it has "generally held that if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice" and that "Colorado law recognizes if a plaintiff asserts all of his or her claims, including state law claims, in federal court, and the federal court declines to exercise

---

[8]Plaintiff does not allege that the Russells testified as complaining witnesses during any pre-trial proceedings. *See Anthony v. Baker*, 955 F.2d 1395, 1401 (10th Cir. 1992) ("[I]n the context of a § 1983 claim for malicious prosecution, a complaining witness is not absolutely immune for testimony given in a pre-trial setting if that testimony is relevant to the manner in which the complaining witnesses initiated or perpetuated the prosecution."); *Norris v. City of Aurora*, No. 03-cv-1334-WDM-BNB, 2005 WL 1768758, at *7 (D. Colo. July 25, 2005). Furthermore, any such testimony would have fallen outside the statute of limitations.

supplemental jurisdiction [over the state claims], the plaintiff may refile those claims in state court") (citations, quotation marks and alterations omitted); 28 U.S.C. § 1367(d) (providing that the state law statute of limitations "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period").

In a response brief, plaintiff requests leave to amend his complaint if the "Court finds that Plaintiff could make more particular allegations or clarify the allegations linking the Defendants." Docket No. 15 at 4-5. However, plaintiff has not filed a motion to amend. The Local Rules of this District are clear that a "motion shall not be included in a response or reply to the original motion," but rather "shall be made in a separate paper." D.C.COLO.LCivR 7.1.C; *see Calderon v. Kansas Dep't of Social and Rehabilitation Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) ("We have recognized the importance of Fed.R.Civ.P. 7(b) and have held that normally a court need not grant leave to amend when a party fails to file a formal motion."). In any event, plaintiff does not explain how he proposes to remedy the deficiencies identified above, thus providing the Court with no basis upon which to grant the requested relief.[9]

---

[9]Furthermore, the Court takes the opportunity to note that any assertion of a separate § 1983 defamation claim would likely be futile. In such a claim regarding defendant Cutler's statements to the press, Cutler would enjoy only qualified, rather than absolute immunity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 277-78 (1993) (concluding that "[c]omments to the media have no functional tie to the judicial process just because they are made by a prosecutor," as the "[t]he conduct of a press conference does not involve the initiation of a prosecution, the presentation of the state's case in court, or actions preparatory for these functions"). Plaintiff alleges that the interest infringed by the statements was his ability to run for office and has not alleged any other "ancillary change in [his] status" resulting from the statements. *Evans v. Fogarty*, 241 F. App'x 542, 559 (10th Cir. 2007). Cutler made the statements in April 2007, approximately three years before plaintiff brought the present lawsuit. Whether

For the foregoing reasons, it is

**ORDERED** that, to the extent discussed above, the Recommendation [Docket No. 28] is ACCEPTED.  It is further

**ORDERED** that the motion to dismiss filed by defendants Walker, Chilson, Pinkston, and Cutler [Docket No. 10] is GRANTED.  It is further

**ORDERED** that the motion to dismiss filed by defendants Judith and Barry Russell [Docket No. 16] is GRANTED.  It is further

**ORDERED** that plaintiff's complaint is dismissed, and judgment shall enter in favor of defendants and against plaintiff.


DATED March 16, 2011.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

---

described as a threat not to run for office or as damage to his reputation, thus rendering him unelectable, plaintiff was aware of the injury at the time the statements were made in April 2007, which is outside the statute of limitations.  *See Johnson v. Johnson County Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) ("Section 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his action.") (citation and quotation marks omitted).  Thus, even if the Court allowed plaintiff to assert a separate § 1983 defamation claim against Cutler, which plaintiff has not asked permission to do, it would likely be futile.